AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Rosenide Venant,<br>a/k/a "Rose Lugo" | )<br>)<br>)  Case No.<br>)<br>)  **8:21MJ1295AAS**<br>)<br>) |

_Defendant(s)_

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___March 2020 to August 2020___ in the county of ___Polk___ in the ___Middle___ District of ___Florida___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 371;<br>18 U.S.C. s. 1014 | Conspiracy; False Statements to a Financial Institution |

This criminal complaint is based on these facts:

See Affidavit.

☐ Continued on the attached sheet.

_____
_Complainant's signature_

SA John E. Herman, FBI
_Printed name and title_

Sworn to before me ~~and signed in my presence.~~ over the telephone and signed by me pursuant to FRCP 4.1 and 4(d).

Date: March 26, 2021

_____
_Judge's signature_

City and state: Tampa, FL

AMANDA A. SANSONE, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF WARRANT

I, John E. Herman, being duly sworn, hereby depose and state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since 2007. Prior to joining the FBI, I was Captain in the United States Army. My duties include investigating federal crimes, including conspiracy, bank fraud, and wire fraud.

2.      As an FBI agent, I am charged with enforcing the laws of the United States of America, and possess the authority to request, to obtain, and to execute orders of the United States Courts, including search warrants issued under federal authority. I have extensive training in investigations, particularly for fraud.

3.      This Affidavit supports an application for a criminal complaint and arrest warrant for JULIO ENRIQUE LUGO, a/k/a "Rick Williams," and ROSENIDE VENANT, a/k/a "Rose Lugo." As detailed below, LUGO and VENANT conspired to defraud the Small Business Administration ("SBA") and to commit other offenses by submitting false and fraudulent information to steal and attempt to steal coronavirus relief funds from the SBA's Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") program. In total, approximately 70 fraudulent loan applications seeking at least approximately $5.8 million in SBA coronavirus relief funds were traced back to Internet Protocol addresses ("IP-Addresses") assigned to LUGO and VENANT's home in the Middle District of Florida. LUGO, himself, was listed as the applicant on at least four of the fraudulent EIDL/PPP loans, which sought a total of approximately $321,485. As for

VENANT, she was listed as the applicant on at least 13 fraudulent EIDL/PPP loans, which sought a total of approximately $1.2 million. Additionally, as detailed later, LUGO and VENANT had access to and misused EIDL/PPP funds, including to pay off a note on a luxury vehicle in violation of 18 U.S.C. § 1957.

4.     Based on these acts, as set forth more fully below, probable cause exists to believe that LUGO and VENANT violated 18 U.S.C. §§ 371 (conspiracy to defraud the SBA) and 1014 (false statements to a lending institution). Further, probable cause exists to believe that LUGO violated 18 U.S.C. § 1957 (illegal monetary transactions). This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

### Overview

5.     In 2015, JULIO ENRIQUE LUGO, a/k/a "Rick Williams," was convicted of conspiracy to defraud the federal government (18 U.S.C. § 286) and aggravated identity theft (18 U.S.C. § 1028A). *United States v. Julio Lugo*, Case No. 0:14-cr-60105 (S.D. Fla.), Doc. 59. Then, LUGO had filed 48 fraudulent federal income tax returns using tax-preparation businesses—including, pertinently, The Number One Tax Specialist, LLC ("NOTS")—to steal at least $279,000 from the United States Treasury using the stolen identities of unknowing victims. *See id.* at Docs. 33–34. For that conviction, LUGO remains on supervised release. *See id.* at

2

Doc. 59. Now, LUGO is working with new conspirators to steal federal funds—this time, coronavirus relief funds offered by the SBA—using small businesses and shell companies like NOTS, which LUGO had used in his previous crimes.

6.      The ongoing investigation has revealed that LUGO and VENANT are conspiring to defraud the SBA with several other close family members. Other associates and relatives also appear to be involved. The conspirators publicly hold Florida-registered corporations (the "Lugo Family Companies") that have fraudulently secured coronavirus relief funds. As detailed herein, fraudulent loan and grant applications for the Lugo Family Companies were electronically filed from IP-Addresses[1] associated with the home where LUGO and VENANT live. The Lugo Family Companies' fraudulent loan applications sought approximately $2.5 million in EIDL/PPP funds, resulting in at least $1.6 million of theft as set forth on the below table. In addition, the same IP-Addresses were the origin for at least 48 other suspicious EIDL applications for third-party companies. Altogether, the fraudulent EIDL applications electronically submitted from LUGO and VENANT's house sought at least approximately $5.8 million from the SBA.

---

[1] Specifically, the IP-Addresses 47.200.4.123 and 47.200.25.251 were assigned to the home on Preston Avenue in Davenport, Florida, where LUGO and VENANT live. The associated account for internet service was in VENANT's name.

### Lugo Family SBA EIDL/PPP Loan Applications



| | |
|---|---|
| **Julio Enrique Lugo** | **Rosenide Venant** |
| Total Applications Applied for 4 SBA loans (3 EIDL, 1 PPP) using 2 Florida LLCs | Total Applications Applied for 13 SBA loans (8 EIDL, 5 PPP) using 5 Florida LLCs |
| Lugo's Claimed LLCs *Universal Property Vision; Facerick Entertainment* | Venant's Claimed LLCs *Rosenide Tax Consulting; Rose Garden Recovery Living; Sisters Compassionate Care; Lysal-Central, Inc.; Diamond Taxes and Multi Services* |
| EIDL/PPP funding attempted **$321,485** EIDL/PPP funding secured **$256,485** | EIDL/PPP funding attempted **$1,209,553** EIDL/PPP funding secured **$413,742** |

**Relative #1**
Total Applications
Applied for 3 SBA EIDL loans
using 2 Florida LLCs
Claimed LLCs
*Diamond Taxes and Multi Services;
Consumer Dispute Services*
EIDL/PPP funding attempted
**$400,700**
EIDL/PPP funding secured
**$273,200**

**Relative #2**
Total Applications
Applied for 2 SBA EIDL loans
using 2 Florida LLCs
Claimed LLCs
*The Number One Tax Specialist;
Rose Compassionate Care*
EIDL/PPP funding attempted
and secured:
**$294,700**

**Relative #3**
Applicant for SBA EIDL loan
for *H & C Mortgage
Investments Realty Inc.*
EIDL funds secured:
**$121,500.**

**Relative #4**
Applicant for SBA EIDL loan
for *H & C Community
Development, Inc.* and *Western
Shores Mortgage Investment, Inc.*
EIDL funds secured:
**$249,900**

*See also, infra,* Appendix 1 (Table of Lugo Family PPP/EIDL Loans).

7.    Once the EIDL or PPP funds were disbursed, the conspirators exchanged checks with one another that were falsely labeled as "payroll" and other qualified expenses. These transactions were designed, at least in part, to conceal the nature, ownership, and control of the fraud proceeds. The "payroll" checks were merely pretextual because the conspirators ultimately misused the stolen EIDL and PPP funds, including approximately $47,000 to pay off a note on a 2017 BMW 7-Series sedan, over $49,000 in charges at casinos, at least $13,500 spent at weight loss centers, questionable Zelle transfers exceeding $200,000, and ATM and counter withdrawals exceeding $320,000. LUGO even publicized his misuse of the SBA funds in a nearly eight-minute-long video that he posted to his Facebook account[2] on July 1,

---

[2] The stills on the following page were from a video posted to the Facebook profile named "Rick Williams." The profile includes numerous depictions of LUGO, VENANT, and his

2020. The video featured LUGO and VENANT at a hotel room littered with $100 bills and several items from Louis Vuitton, including, as LUGO stated in the video, a $5,000 watch. Sample stills from the video are depicted below:



8.     This conduct establishes probable cause that LUGO and VENANT conspired to defraud the SBA in violation of 18 U.S.C. § 371 and violated multiple federal criminal statutes, including 18 U.S.C. §§ 1014 and 1957.

*Background Regarding the PPP*

9.     In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, or the "CARES Act," was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 emergency.

---

conspirators/relatives. "Rick Williams" is believed to be an alias that pairs his middle name "Enrique" (for "Rick") with a family surname "Williams."

5

Among its various provisions, the CARES Act authorized the SBA to guarantee PPP loans, the full principal amount of which could qualify for forgiveness.

10.     Borrowers were required to use PPP loan proceeds for enumerated purposes, including payroll costs,[3] rent and utilities, and mortgage interest payments. Knowing misuse of PPP funds subjected the borrower to additional liability, such as charges for fraud.

11.     Under the PPP, the maximum loan amount is the lesser of $10 million or an amount calculated using a payroll-based formula specified in the CARES Act. The payroll-based formula principally considers the borrower's aggregate payroll costs from the preceding twelve months for all domestic employees.[4] Once an average monthly payroll cost is established, the borrower multiplies that amount by 2.5 to arrive at the total maximum PPP loan amount.

12.     To apply for a PPP loan, potential borrowers could electronically submit the SBA Form 2483 with supporting payroll documentation to a financial institution that administers the loan and serves as custodian of the funds. On the SBA Form

_____

[3] Payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation.

[4] The payroll-based formula expressly excluded (i) any compensation of an employee whose principal place of residence is outside of the United States; and (ii) the compensation of an individual employee in excess of an annual salary of $100,000, prorated as necessary.

6

2483, an authorized representative must make several certifications about his business operations and related information. Those certifications include that: (i) the applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC; (ii) current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (iii) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses. Upon submitting the SBA Form 2483, the authorized representative certifies that, should he knowingly use the PPP funds for unauthorized purposes, the United States could hold him legally liable, including for charges of fraud.

13.    Additionally, the applicant must respond to questions regarding his personal history, including whether he was convicted of a felony and/or placed on probation within the previous five years. The PPP loan application expressly states that, should the applicant respond "yes," the PPP loan would "not be approved." The applicant must also certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents.[5] Such supporting documents could include tax filings with the Internal Revenue Service ("IRS"), such as the IRS Form W-3 (Transmittal of Wage and Tax Statements), IRS Form 940 (Employer's Annual

---

[5] Borrowers must submit supporting documents to establish loan eligibility for PPP. Such support could include payroll tax filings (e.g., IRS Forms 940 and 941), payroll processor records, bank records, or other records sufficient to demonstrate the qualifying payroll amount.

Federal Unemployment Tax Return), or the IRS Form 941 (Employer's Quarterly

Federal Tax Return).

14.     Finally, the applicant must certify the following warning regarding false

statements and other criminal penalties:

> I understand that knowingly making a false statement to obtain a
> guaranteed loan from SBA is punishable under the law, including under
> 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five
> years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by
> imprisonment of not more than two years and/or a fine of not more
> than $5,000; and, if submitted to a federally insured institution, under
> 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or
> a fine of not more than $1,000,000.

*The Conspirators' Fraudulent PPP Loans*

15.     The ongoing investigation has established that, since March 2020, the

conspirators have fraudulently applied for at least approximately 25 EIDL and PPP

loans using the Lugo Family Companies. These fraudulent loan applications sought

at least $2.5 million in coronavirus relief funds, resulting in over $1.6 million of

disbursed program funds. Of this, at least approximately $378,000 derived from

fraudulent PPP loan applications from LUGO or VENANT as set forth below:

| # | Applicant | Company Name | On or About Application Date | Approx. Amount Requested | Associated Email Account(s) |
|---|-----------|--------------|------------------------------|--------------------------|------------------------------|
| 1 | Julio Lugo | Universal Property Vision LLC ("UPV") | 4/20/2020 | $59,485 | julioenriquelugo@gmail.com |
| 2 | Rosenide Venant | Rose Garden Recovery Living Inc. ("RGR") | 4/8/2020 | $60,000 (loan denied) | roselugo3180@gmail.com |
| 3 | Rosenide Venant | Rose Garden Recovery Living Inc. ("RGR") | 4/24/2020 | $40,000 | roselugo3180@gmail.com |

| 4 | Rosenide Venant | Sisters Compassionate Care LLC ("SCC") | 5/6/2020 | $101,242 | roselugo3180@gmail.com |
|---|---|---|---|---|---|
| 5 | Rosenide Venant | Diamond Taxes and Multi Services Inc. ("DTMS") | 4/20/2020 | $40,208 | roselugo3180@gmail.com |
| 6 | Rosenide Venant | Diamond Taxes and Multi Services Inc. ("DTMS") | 4/28/2020 | $77,303 (loan denied) | roselugo3180@gmail.com |

*UPV's False and Fraudulent PPP Loan Application*

16.     On or about April 20, 2020, LUGO electronically submitted a fraudulent SBA Form 2483 to Bank-1, a federally insured financial institution, for a construction company named UPV. In turn, Bank-1 awarded LUGO approximately $59,485 in PPP funding. On the PPP loan application, LUGO was identified as UPV's "authorized representative" and sole owner. He cited "Payroll," "Lease/Mortgage Interest," and "Utilities" as the purposes for the PPP loan.

17..     According to the PPP loan application and Florida corporate records, UPV was purportedly located at a commercial address on Ambersweet Way in Davenport, Florida, which is within the Middle District of Florida. That address, however, is merely a drop-box site at a United Parcel Service ("UPS") store.[6] While the UPS store served as UPV's purported business address, LUGO claimed to reside at a home on Pinecrest Loop in Davenport, Florida (the "Pinecrest Loop Address"). The Pinecrest Loop Address, it bears noting, would later also serve as the purported

_____

[6] In prior years, UPV was registered at a residential property on Calabria Avenue, in Davenport, Florida, which is a residential property. According to open source research, LUGO resided at the address in the past, but the property is now occupied by another individual.

9

business address on at least six other fraudulent PPP/EIDL applications submitted by his family members—including Relative #2's EIDL application for NOTS, the tax preparation company central to LUGO's 2015 fraud conviction.

18.     On the fraudulent PPP loan application, LUGO claimed that UPV had 16 employees with an Average Monthly Payroll demand of $47,588—or, annualized, $571,056. As the investigation has revealed, that was false. UPV had reported no wages for any employees to the State of Florida in 2019. In Florida, employers must report quarterly wage and hour returns to state agencies. Records from the Florida Department of Economic Opportunity ("FDOE") showed a complete lack of reporting for UPV in 2019.

19.     Further, a preliminary review of available financial records for UPV showed no payroll activity prior to the coronavirus pandemic. UPV held accounts at two different banks: Bank-2 (-6251) and Bank-1 (-0385). According to the available bank records, prior to March 2020, UPV made no payments to the IRS for payroll taxes or otherwise to payroll processors. Nor did UPV consistently pay wages directly to steady employees. UPV only began issuing checks to purported "employees" after LUGO secured PPP funds from Bank-1. After securing the PPP funds, UPV issued checks labeled as "payroll" to his immediate family members, including conspirator VENANT, and others. And, in turn, their respective companies—which likewise had no payroll activity prior to the pandemic—issued similarly labeled "payroll" checks to conspirators LUGO, VENANT, and many of the same family members.

20.     On the SBA Form 2483, LUGO also lied about his status as a convicted felon on supervised release, which would have automatically disqualified him as a PPP borrower. As noted previously, the SBA Form 2483 asked borrowers, "Within the last 5 years, [have you] been placed on any form of parole or probation?" The application expressly warned that, by answering "YES," the PPP loan would be denied. LUGO checked "NO," even though he was actively serving a term of supervised release from his 2015 tax conviction. He remains on supervision today. LUGO affirmed his false answer by entering his electronic initials "J.E.L."

21.     The SBA Form 2483 also reflected LUGO's initials ("J.E.L.") beside all required certifications for the PPP loan, including those set forth verbatim below:

   a. "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

   b. "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

22.     Along with the SBA Form 2483, LUGO executed an electronic PPP Loan Promissory Note ("Note") with Bank-1 on or about May 7, 2020. The email address "julioenriquelugo@gmail.com" was also identified on the note. In the section

11

titled "Use of Proceeds," the Note advised that the "Borrower"—meaning LUGO—"shall use the proceeds of this loan only for eligible expenses under the terms of the PPP." It further warned that "[t]he Borrower shall use the funds received under this Note for business purposes only and *not* for personal, family or household purposes." (Emphasis added.) LUGO, however, ignored these warnings.

23. Additionally, in the Note, LUGO certified the truth and accuracy of the information he had provided. Section 12, sub-section 17 of the certification stated:

> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

24. This conduct establishes probable cause that LUGO violated multiple federal criminal statutes, including 18 U.S.C. § 1014.

*VENANT's Fraudulent PPP Loan Applications*

25. The ongoing investigation has also revealed that LUGO's wife, ROSENIDE VENANT, lied on applications seeking SBA-guaranteed funds. Using one of her known email addresses (*i.e.*, "roselugo3180@gmail.com"), VENANT electronically submitted at least five fraudulent PPP loan applications for companies held in her name to federally insured financial institutions as detailed in the following table. VENANT's loan applications are discussed next.

12

| # | Financial Institution | Company Name | On or About Application Date | Approx. Amount Disbursed | Associated Email Account(s) |
|---|---|---|---|---|---|
| 1 | Bank-2 | Sisters Compassionate Care LLC (SCC) | 5/6/2020 | $101,242 | roselugo3180@gmail.com |
| 2 | Bank-3 | Rose Garden Recovery Living Inc. (RGR) | 4/8/2020 | $60,000 (denied) | roselugo3180@gmail.com |
| 3 | Bank-3 | Rose Garden Recovery Living Inc. (RGR) | 4/24/2020 | $40,000 | roselugo3180@gmail.com |
| 4 | Bank-1 | Diamond Taxes and Multi Services Inc. (DTMS) | 4/20/2020 | $40,208 | roselugo3180@gmail.com |
| 5 | Bank-1 | Diamond Taxes and Multi Services Inc. (DTMS) | 4/28/2020 | $77,303 (denied) | roselugo3180@gmail.com |

*Sisters Compassionate Care LLC*

26.     On or about May 6, 2020, VENANT electronically submitted a fraudulent PPP loan application for Sisters Compassionate Care LLC ("SCC") to Bank-2, a federally insured financial institution. According to open source research, SCC is a home health care service with only one Google review. The review, posted by the user "JULIO LUGO," stated: "the place is a home for any elderly that needs love an (sic) care." SCC also maintained a website describing residential facilities for the elderly and disabled.

27.     VENANT listed the Pinecrest Loop Address as SCC's business address on documents supporting the application. This address, as noted previously, appeared on several of the conspirators' fraudulent EIDL/PPP loan applications.

28.     VENANT served as SCC's "authorized representative" on the PPP loan application. As such, she certified that SCC "had employees for whom it paid salaries and payroll taxes." VENANT further advised that, for 2019, SCC's Average Monthly

13

Payroll was approximately $40,497.13—or, annualized, $485,965.56. By entering this substantial figure into the payroll calculator, SCC requested approximately $101,242 in SBA-guaranteed PPP funds. Bank-2 funded the loan on or about May 8, 2020.

29.    SCC's purported payroll amount, however, required supporting documentation. Accordingly, VENANT sent Bank-2 a bogus IRS Form 940 for 2019. The IRS confirmed, however, that SCC had made no filings at all for Tax Year 2019. Further, SCC had reported no wages to the State of Florida for the same period. Additionally, the IRS Form 940 that VENANT uploaded had plain badges of fraud, including a backdated signature. See Excerpt Below.

| Part 7: | Sign here. You MUST complete both pages of this form and SIGN it. | | |
|---|---|---|---|
| Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that no part of any payment made to a state unemployment fund claimed as a credit was, or is to be, deducted from the payments made to employees. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. | | | |
| X Sign your name here | *Verified by PDFfiller* 05/04/2020 | Print your name here | ROSENIDE VENANT |
| | | Print your title here | MANAGER |
| Date | 12 / 27 / 2019 | Best daytime phone | ____ Redacted ____ |

30.    As reflected above, VENANT manually dated the form "12/27/2019" while the automated date stamp beside her electronic signature read "05/04/2020," only two days before she submitted the PPP loan application to Bank-2.

31.    VENANT also supplied a purported IRS Form 941 and related payroll processing records for the first quarter of 2020. A preliminary review of available bank records for SCC, however, showed no corresponding payroll activity prior to the coronavirus pandemic. And, again, once the PPP funds were disbursed, SCC issued a flurry of checks labeled as "payroll" to other conspirators, including LUGO.

14

32. Finally, VENANT certified that the PPP funds awarded to SCC would "be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments." VENANT also acknowledged her understanding that she could be charged with fraud for the knowing use of PPP funds for unauthorized purposes. The conspirators, however, disregarded these mandates, including with extensive spending at casinos, large cash withdrawals, and the use of the EIDL/PPP funds at weight loss centers.

33. This conduct establishes probable cause that VENANT violated multiple federal criminal statutes, including 18 U.S.C. § 1014.

*Rose Garden Recovery Living Inc.*

34. VENANT also applied for two PPP loans for Rose Garden Recovery Living Inc. ("RGR") from Bank-3, a federally insured financial institution. She again used one of her known email addresses (*i.e.*, "roselugo3180 @gmail.com"). According to its website, RGR offers sober-living housing to recovering addicts. On RGR's PPP loan applications, VENANT listed the Pinecrest Loop Address as its purported business location, which, as noted before, appeared on many of the subject fraudulent PPP and EIDL applications.

35. VENANT attempted to secure PPP loan funds for RGR twice. The first PPP loan application for RGR was submitted on or about April 8, 2020. Notably, that day, the Lugo Family Companies had collectively applied for at least seven different

SBA loans using their family members as applicants to request over $600,000 in funds using IP-Addresses associated with LUGO and VENANT's house:

| # | Applicant | Company Name | Associated Email Account(s) | On or About Application Date | EIDL/ PPP | Amount Requested |
|---|-----------|--------------|-----------------------------|-----------------------------|-----------|------------------|
| 1 | Relative #1 | Diamond Taxes and Multi Services Inc. (DTMS) | d********2797@gmail.com | 4/8/2020 | EIDL | $127,500 |
| 2 | Julio Lugo | UPV | julioenriquelugo@gmail.com; rickrose8376@gmail.com | 4/8/2020 | EIDL | $65,000 |
| 3 | Rosenide Venant | Lysal-Central, Inc. (Lysal) | rosetaxconsultingllc@gmail.com; roselugo3180@gmail.com | 4/8/2020 | EIDL | $92,500 |
| 4 | Rosenide Venant | RGR | roselugo3180@gmail.com | 4/8/2020 | EIDL | $110,000 |
| 5 | Rosenide Venant | RGR | roselugo3180@gmail.com | 4/8/2020 | PPP | $60,000 |
| 6 | Rosenide Venant | Rosenide Tax Consulting LLC (RTC) | roselugo3180@gmail.com | 4/8/2020 | EIDL | $76,800 |
| 7 | Rosenide Venant | SCC | roselugo3180@gmail.com | 4/8/2020 | EIDL | $79,000 |
| | | | | | **Total:** | **$610,800** |

36.    When Bank-3 denied VENANT's first request for RGR, she tried again on April 24, 2020. The second loan attempt was successful. On or about May 1, 2020, Bank-3 disbursed $40,000 in PPP funds to RGR's bank account (-0956). Again, VENANT had agreed this money would only be used for qualified PPP expenses. A review of RGR's account (-0956) at Bank-3, however, revealed that the funds were instead used for other purposes, including large transfers to other Lugo Family

16

Companies. For example, on or about May 4, 2020, UPV received approximately $12,500 from the RGR Account (-0956). Similarly, on or about June 3, 2020, RGR wired approximately $17,000 to SCC's account (-3292) at Bank-2.

37.   Later, the RGR account (-0956) reflected other suspicious activity, such as large wire transfers from some third-party companies that had submitted EIDL applications from LUGO's confirmed IP-addresses. For example, on or about July 9, 2020, the RGR account (-0956) received an incoming wire of $48,500 from Company-1 in Indiana. That same week, Company-1 had received approximately $150,000 from the SBA based on an EIDL application electronically filed from LUGO and VENANT's home. Similarly, in July 2020, the RGR account (-0956) received two incoming wires totaling $43,500 from Company-2. Again, that same month, Company-2 had received approximately $150,000 from the SBA based on an EIDL application also sent from LUGO and VENANT's home. Neither EIDL application disclosed a "preparer" as required by the SBA.

38.   Finally, in under one month, RGR sought EIDL/PPP funding at least four times—and each application reported different information for RGR. According to the fraudulent applications, RGR had anywhere from 5 to 10 employees and at least 2 different business addresses as set forth on the table below. Notwithstanding, while the RGR applications asserted upwards of 10 different employees with as much as $20,000 in payroll per month, it had reported no wages to the State of Florida for 2019.

| On or About Application Date | RGR's Purported Business Address | EIDL / PPP | Requested Loan Amount | Reported Number of RGR Employees |
|---|---|---|---|---|
| 3/30/2020 | Ambersweet Way, Davenport, FL | EIDL | $150,000 | 10 |
| 4/8/2020 | Ambersweet Way, Davenport, FL | EIDL | $110,000 | 5 |
| 4/8/2020 | Pinecrest Loop Davenport, FL | PPP | $60,000 | 7 |
| 4/24/2020 | Pinecrest Loop Davenport, FL | PPP | $40,000 | 6 |

39.     This conduct establishes probable cause that VENANT violated multiple federal criminal statutes, including 18 U.S.C. § 1014.

*Diamond Taxes and Multi Services Inc.*

40.     Finally, VENANT also sought PPP funding from Bank-1, a federally insured financial institution, for Diamond Taxes and Multi Services Inc. ("DTMS"). In April 2020, she submitted two PPP loan applications for DTMS to Bank-1 using the email account "roselugo3180@gmail.com." Metadata provided by Bank-1 revealed that the fraudulent PPP loan applications were electronically filed from an IP-Address associated with LUGO and VENANT's home. Ultimately, Bank-1 approved one of the PPP loans, disbursing approximately $40,208 in funds to DTMS for authorized PPP expenses.

41.     Like the other Lugo Family companies that sought PPP funds, DTMS also appeared to be ineligible. For 2019, DTMS had reported no wages for any

18

employees to the State of Florida. Nor had DTMS filed any business or payroll tax returns for 2019, which were required filings. Given that DTMS is a purported tax-preparation company, it should be on notice of its IRS filing requirements.

42.     Further, the dearth of federal and state wage reporting undermines the legitimacy of supporting documentation that DTMS sent Bank-1 as part of its PPP loan applications. Specifically, VENANT sent a copy of a purported IRS Form W-3 (Transmittal of Wage and Tax Statements) for DTMS with each application. The IRS, however, has no record of having received a Form W-3 from DTMS. Worse yet, the Forms W-3 for the DTMS applications did not match. The Forms W-3 reflected VENANT's electronic signature dated "12/27/2019" with the unique EIN (i.e., employer identification number) assigned to DTMS. Notwithstanding, the forms reflected different purported business addresses as well as different numbers in Box C (Total Number of Forms W-2) and Box 16 (State wages, tips, etc.). Critically, because DTMS did not report wages to the IRS or the State of Florida, the figures reported on either version of the Form W-3 appear to be specious.

43.     This conduct establishes probable cause that VENANT violated multiple federal criminal statutes, including 18 U.S.C. § 1014.

### Background regarding EIDL

44.     The CARES Act also allowed the SBA to offer EIDL funding to businesses affected by the coronavirus pandemic. The businesses, importantly, must have been in operation as of February 1, 2020.

19

45.     EIDL funds came directly from the United States Treasury. The money was only for certain expenses, such as fixed debts, payroll, accounts payable, and other bills that could have been paid had the pandemic not occurred. EIDL funds were not for business expansion or to replace lost sales or profits.

46.     To have sought EIDL funding, applicants were required to send the SBA information about their businesses through an online portal. The required information included, pertinently, (a) the number of employees as of January 31, 2020 (*i.e.*, the declared date for the COVID-19 disaster); (b) the gross revenues and the cost of goods for the business for the twelve months prior to January 31, 2020; (c) the names and other identifying information regarding all owners (including email address); and (d) contact information, banking information, and other identifying details for the business. Applicants were also required to disclose whether, in the last five years, they had been convicted of a crime (other than a minor vehicle violation) or placed on any form of probation.

47.     Once the SBA received the EIDL application, an automated evaluation system would perform various checks, including for duplicate loan requests. Also, using the operational data provided, the system calculated the amount of EIDL funding available to the borrower. Should the application not clear the SBA's automated evaluation, the application's progress would be halted and the applicant would be notified. The applicant could then work with the SBA for reconsideration.

48.     Finally, applicants had to certify that the information provided to the

SBA was true and correct under penalty of perjury. They also had to acknowledge the

below warning regarding civil liability and criminal offenses:

> WARNING: Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. §636(b), In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines and imprisonment, or both, under 15 U.S.C 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

### The Conspirators' Fraudulent EIDL Loans

49.     From March 2020 through August 2020, the SBA traced approximately

70 fraudulent EIDL applications back to LUGO and VENANT's confirmed IP-

addresses. The EIDL applications sought at least $5.8 million from the SBA.

50.     The Lugo Family's Companies accounted for at least 19 of these EIDL

applications, as identified below. The conspirators' EIDL applications—which had

been filed from IP-Addresses assigned to LUGO and VENANT's home—sought over

$2.2 million from the SBA, resulting in at least $1.3 million of theft. As detailed in the

following sections, the Lugo Family Companies and their EIDL applications reflected

numerous badges of fraud, including that none had reported wages to the State of

Florida for 2019. Based on these acts, as described below, probable cause exists to

believe that LUGO, VENANT, and their conspirators committed additional overt

acts, in violation of 18 U.S.C. § 371 (conspiracy to defraud the SBA), with regard to the respective EIDL applications below:

| # | Applicant | Company Name | On or About Date of EIDL Application | Amount, Bold if Approved |
|---|-----------|--------------|--------------------------------------|--------------------------|
| 1 | Relative #1 | Diamond Taxes and Multi Services Inc. (DTMS) | 3/29/2020 | **$127,500** |
| 2 | Lugo | Universal Property Vision LLC (UPV) | 3/29/2020 | **$92,000** |
| 3 | Venant | Lysal-Central, Inc. (Lysal) | 3/29/2020 | $150,000 |
| 4 | Venant | Rosenide Tax Consulting LLC (RTC) | 3/29/2020 | **$150,000** |
| 5 | Venant | Sisters Compassionate Care LLC (SCC) | 3/29/2020 | **$82,500** |
| 6 | Venant | Rose Garden Recovery Living LLC (RGR) | 3/30/2020 | $150,000 |
| 7 | Relative #1 | Diamond Taxes and Multi Services Inc. (DTMS) | 4/8/2020 | $127,500 |
| 8 | Lugo | Universal Property Vision LLC (UPV) | 4/8/2020 | $65,000 |
| 9 | Venant | Lysal-Central, Inc. (Lysal) | 4/8/2020 | $92,500 |
| 10 | Venant | Rose Garden Recovery Living LLC (RGR) | 4/8/2020 | $110,000 |
| 11 | Venant | Rosenide Tax Consulting LLC (RTC) | 4/8/2020 | $76,800 |
| 12 | Venant | Sisters Compassionate Care LLC (SCC) | 4/8/2020 | $79,000 |
| 13 | Relative #3 | H & C Mortgage Investments Realty Inc. (HCM) | 6/16/2020 | **$121,500** |
| 14 | Lugo | Facerick Entertainment LLC (Facerick) | 6/16/2020 | **$105,000** |
| 15 | Relative #4 | H & C Community Development, Inc. (HCC) | 6/22/2020 | **$120,300** |

| 16 | Relative #4 | Western Shores Mortgage Investment, Inc. | 6/22/2020 | $129,600 |
| 17 | Relative #2 | The Number One Tax Specialist LLC (NOTS) | 7/13/2020 | $144,700 |
| 18 | Relative #1 | Consumer Dispute Services LLC (CDS)[7] | 7/24/2020 | $145,700 |
| 19 | Relative #2 | Rose Compassionate Care LLC (RCC) | 7/27/2020 | $150,000 |

*Operational Status of the Lugo Family Companies*

51.    To qualify for EIDL funds, as detailed earlier, the business must have been in operation as of February 1, 2020. Further, applicants were required to disclose, among other information, the number of employees it had as of January 31, 2020, along with the gross revenues and costs of goods for the twelve months prior to that date. Here, as to number of employees per company, the conspirators claimed that the Lugo Family Companies had anywhere between 5 and 28 employees, with a median of 10 employees. These assertions appear specious, however, as the companies had reported no payroll to the State of Florida for 2019.

52.    Additionally, the IRS has provided research regarding the 2019 tax filings for a subset of the Lugo Family Companies, namely, SCC, Rosenide Tax Consulting ("RTC"), and Diamond Taxes and Multi Services Inc. ("DTMS"). The

---

[7] Only one EIDL application on the above table traced back to an alternate IP Address. Specifically, the EIDL application for Consumer Dispute Services LLC ("CDS") was filed from the IP Address 98.21.160.188, which resolved back to a hotel in Indiana where LUGO held a confirmed reservation on or about the date of application, *i.e.*, July 24, 2020. As detailed herein, CDS was only established as a registered Florida corporation in Relative #1's name on or about July 12, 2020— meaning approximately 12 days before seeking EIDL funds.

research revealed that, for 2019, these companies had not filed payroll tax returns—or any tax returns for that matter. The failure to file was particularly egregious here as VENANT has training in tax preparation. And, further, DTMS and RTC were purported to be companies specialized in tax preparation.

53.    In addition to the dearth of state and federal payroll reporting, the conspirators' EIDL applications were even facially fraudulent as to their purported personnel. As the above table reflects, the conspirators submitted multiple EIDL applications for nearly half of the Lugo Family Companies, including UPV, SCC, RGR, DTMS, and Lysal-Central, Inc. ("Lysal"). Each respective company's EIDL applications reflected inconsistent responses to Question 33, which asks for the "Number of Employees (As of January 31, 2020)." The applications also reported varying figures for gross revenues (Question 14) and the cost of goods (Question 15). Each company's responses should have been uniform as the EIDL application seeks information relative to a fixed date (*i.e.*, January 31, 2020). Not once were the responses consistent across multiple EIDL applications, as reflected below:

| Company Name | On or About Application Date | # of Employees | Gross Revenues | Costs of Goods |
|---|---|---|---|---|
| Diamond Taxes and Multi Services Inc. (DTMS) | 3/29/2020 | 10 | $350,000 | $75,000 |
| | 4/8/2020 | 15 | $285,000 | $114,000 |
| Lysal-Central, Inc. (Lysal) | 3/29/2020 | 26 | $750,000 | $125,000 |
| | 4/8/2020 | 28 | $350,000 | $145,000 |
| Rose Garden Recovery Living LLC (RGR) | 3/30/2020 | 10 | $695,000 | $205,200 |
| | 4/8/2020 | 5 | $350,000 | $120,000 |
| Rosenide Tax Consulting LLC (RTC) | 3/29/2020 | 6 | $450,000 | $150,000 |
| | 4/8/2020 | 10 | $275,000 | $102,000 |
| Sisters Compassionate Care LLC (SCC) | 3/29/2020 | 6 | $265,000 | $100,000 |
| | 4/8/2020 | 8 | $279,000 | $105,000 |
| | 3/29/2020 | 8 | $275,000 | $75,000 |

| Universal Property Vision | 4/8/2020 | 5 | $250,000 | $110,000 |

54.     Furthermore, as detailed earlier, EIDL eligibility required that the business was in operation as of February 1, 2020. The bank account and corporate registration histories for some of the Lugo Family Companies support that the companies were not operating then:

| Company Name | On or About Application Date | Corporate Registration and/or Bank Account History |
|---|---|---|
| Consumer Dispute Services LLC (CDS) | 7/24/2020 | CDS registered on or about 7/12/2020, *i.e.*, 12 days before its EIDL application. On 7/24/2020, *i.e.*, the date of application, Relative #1 opened CDS Account -4812 at Bank-1, where she received EIDL funds. |
| Facerick Entertainment LLC (Facerick) | 6/16/2020 | Facerick registered in 2010; remained in "inactive" status since 2012. Facerick's EIDL application listed LUGO's UPV Account -6251 at Bank-2 for receipt of SBA funds. |
| H & C Community Development, Inc. (HCC) | 6/22/2020 | Relative #4 amended HCC's corporate registration on or about 6/22/2020 (*i.e.*, the application date) to remove other officers. That same day, Relative #4 opened an HCC Account -0447 at Bank-1, where he received EIDL funds. |
| Rose Compassionate Care LLC (RCC) | 7/27/2020 | VENANT voluntarily dissolved RCC in 2018. RCC's corporate registration reinstated in Relative #1's name on or about 7/13/2020, *i.e.*, two weeks before EIDL application. |
| The Number One Tax Specialist LLC (NOTS) | 7/13/2020 | NOTS registration went inactive in 2015. On or about 7/12/2020 (*i.e.*, the day before the application), NOTS was reinstated in Relative #2's name. The next day, Bank-1 account (-5287) was opened for NOTS using Relative #2 as signor. |
| Western Shores Mortgage Investment, Inc. (WSM) | 6/22/2020 | WSM's corporate registration went inactive in 2013. On or about 6/22/2020 (*i.e.*, the application date), Relative #4 reinstated WSM. He also opened WSM's bank account (-6110) at Bank-1, where he received EIDL funds. |

55. For example, as described above, the corporate registration for NOTS expired in 2015. Back then, LUGO had used NOTS, a purported tax-preparation business, to commit tax fraud related to his 2015 federal conviction. Despite having used the entity to pursue criminal activity, the conspirators reinstated NOTS as a Florida corporation on July 12, 2020—meaning one day before they submitted its EIDL application. The Sunbiz registration for NOTS identified only one individual as an owner or manager (*i.e.*, Relative #2). The next day (*i.e.*, the EIDL application date), Relative #2 opened a bank account for NOTS (-5287) at Bank-1. The timing of certain corporate registrations and account openings in relation to the EIDL applications supports that the conspirators used and established these entities to defraud the SBA's EIDL program. This pattern establishes probable cause for, among other violations, 18 U.S.C. § 371.

56. Finally, as noted previously, applicants were required to disclose whether, in the last five years, they had been convicted of a crime or placed on any form of probation. As he did on the PPP loan applications, LUGO again concealed his supervised release status when he sought EIDL funds from the SBA for Facerick and UPV.

57. The acts described above establishes probable cause to believe that LUGO and VENANT violated 18 U.S.C. §§ 371 (conspiracy to defraud the SBA).

*Use of Fraudulent EIDL Funds to Purchase BMW*

58.    According to purchase documents, on or about May 19, 2020, VENANT and Relative #1, purchased a 2017 BMW from a dealership in Hollywood, Florida.  The purchase price for the vehicle was $51,055.  At the time of the purchase, VENANT and Relative #1 financed a total of approximately $54,595 with a lender. As will be detailed below, a majority of this loan was later paid off with fraudulently obtained EIDL funds.

59.    According to records obtained from the lender, VENANT and Relative #1 were co-applicants on loan account number 62062722847831001 (Loan 1001), which was used to purchase the BMW in May 2020. While there were a few smaller payments made towards Loan 1001, the largest payment was a $47,000 wire on June 26, 2020, from LUGO's UPV bank account (-6251) at Bank-2.  This wire was funded just days before with fraudulently obtained EIDL proceeds.

60.    As detailed above, on or about June 16, 2020, LUGO had submitted an EIDL application on behalf of Facerick Entertainment, LLC, seeking approximately $105,000 (the "Facerick SBA EIDL").  Facerick was formed and registered in 2010; however, according to corporate filings, it has remained in "inactive" status since 2012.  Facerick's SBA EIDL application listed UPV Account -6251 for receipt of the SBA funds.

61.    According to account records, UPV Account -6251 was opened on or about December 21, 2018, by LUGO, and is held in the name of UPV. LUGO is the sole signatory on the account.

62.    On June 22, 2020, UPV Account -6251 had a balance of approximately $1,324.44. On or about June 23, 2020, $104,900 from the Facerick SBA EIDL was deposited into UPV Account -6251, leaving a balance of $106,224.44.

63.    Immediately following the Facerick SBA EIDL deposit, on June 23, 2020, there were two outgoing Zelle transfers totaling $6,000. On June 24, 2020, there was an unexplained counter credit of $15,000 to the account, leaving a balance of $115,224.44. On June 26, 2020, $47,000[8] was transferred from UPV Account -6251 to Loan 1001 to pay down the balance owed. According to the loan documents, Loan 1001 was ultimately paid off in or around August 2020.

64.    Because the June 24, 2020 wire that substantially satisfied Loan 1001 involved more than $10,000 in criminally derived funds, LUGO made this transaction in violation of 18 U.S.C. § 1957.

---

[8] Even assuming, *arguendo*, that the unexplained June 23, 2020 counter credit of $15,000 to UPV Account 6251 came from untainted sources, those funds would not have been sufficient, on their own, to fund the $47,000 wire to Loan 1001 on June 24, 2020. Therefore, at least $32,000 of this wire is traceable to the proceeds of the fraudulently obtained Facerick SBA EIDL.

## CONCLUSION

Based on the foregoing facts, probable cause exists to believe that, from at least in or around March 2020, through and including August 2020, JULIO ENRIQUE LUGO (a/k/a "Rick Williams") and ROSENIDE VENANT (a/k/a "Rose Lugo") violated 18 U.S.C. §§ 371 (conspiracy to defraud the SBA) and 1014 (false statements to a lending institution). Further, probable cause exists to believe that, on or about June 24, 2020, LUGO violated 18 U.S.C. § 1957 (illegal monetary transactions).

FURTHER AFFIANT SAYETH NAUGHT.

John E. Herman, Special Agent, FBI

Sworn to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 and 4(d) 41(d)(3) via telephone this 26 day of March 2021.

AMANDA A. SANSONE
United States Magistrate Judge

## Appendix 1: Lugo Family Companies' SBA Loans

| # | Applicant | Company Name | On or About Application Date | EIDL / PPP | Amount Requested | Approved? |
|---|---|---|---|---|---|---|
| 1 | Relative #3 | H & C Mortgage Investments Realty Inc. (HCM) | 6/16/2020 | EIDL | $121,500 | Yes |
| 2 | Relative #1 | Consumer Dispute Services LLC (CDS) | 7/24/2020 | EIDL | $145,700 | Yes |
| 3 | Relative #1 | Diamond Taxes and Multi Services Inc. (DTMS) | 3/29/2020 | EIDL | $127,500 | Yes |
| 4 | Relative #1 | Diamond Taxes and Multi Services Inc. (DTMS) | 4/8/2020 | EIDL | $127,500 | No |
| 5 | Relative #4 | H & C Community Development, Inc. (HCC) | 6/22/2020 | EIDL | $120,300 | Yes |
| 6 | Relative #4 | Western Shores Mortgage Investment, Inc. | 6/22/2020 | EIDL | $129,600 | Yes |
| 7 | Relative #2 | Rose Compassionate Care LLC (RCC) | 7/27/2020 | EIDL | $150,000 | Yes |
| 8 | Relative #2 | The Number One Tax Specialist LLC (NOTS) | 7/13/2020 | EIDL | $144,700 | Yes |
| 9 | Julio Lugo | Facerick Entertainment LLC (Facerick) | 6/16/2020 | EIDL | $105,000 | Yes |
| 10 | Julio Lugo | Universal Property Vision LLC (UPV) | 3/29/2020 | EIDL | $92,000 | Yes |
| 11 | Julio Lugo | Universal Property Vision LLC (UPV) | 4/8/2020 | EIDL | $65,000 | No |
| 12 | Julio Lugo | Universal Property Vision LLC (UPV) | 4/20/2020 | PPP | $59,485 | Yes |

| 13 | Rosenide Venant | Diamond Taxes and Multi Services Inc. (DTMS) | 4/20/2020 | PPP | $40,208 | Yes |
|----|-----------------|----------------------------------------------|-----------|-----|---------|-----|
| 14 | Rosenide Venant | Diamond Taxes and Multi Services Inc. (DTMS) | 4/28/2020 | PPP | $77,303 | No |
| 15 | Rosenide Venant | Lysal-Central, Inc. (Lysal) | 3/29/2020 | EIDL | $150,000 | No |
| 16 | Rosenide Venant | Lysal-Central, Inc. (Lysal) | 4/8/2020 | EIDL | $92,500 | No |
| 17 | Rosenide Venant | Rose Garden Recovery Living LLC (RGR) | 3/30/2020 | EIDL | $150,000 | No |
| 18 | Rosenide Venant | Rose Garden Recovery Living LLC (RGR) | 4/8/2020 | EIDL | $110,000 | No |
| 19 | Rosenide Venant | Rose Garden Recovery Living LLC (RGR) | 4/8/2020 | PPP | $60,000 | No |
| 20 | Rosenide Venant | Rose Garden Recovery Living LLC (RGR) | 4/24/2020 | PPP | $40,000 | Yes |
| 21 | Rosenide Venant | Rosenide Tax Consulting LLC (RTC) | 3/29/2020 | EIDL | $150,000 | Yes |
| 22 | Rosenide Venant | Rosenide Tax Consulting LLC (RTC) | 4/8/2020 | EIDL | $76,800 | No |
| 23 | Rosenide Venant | Sisters Compassionate Care LLC (SCC) | 3/29/2020 | EIDL | $82,500 | Yes |
| 24 | Rosenide Venant | Sisters Compassionate Care LLC (SCC) | 4/8/2020 | EIDL | $79,000 | No |
| 25 | Rosenide Venant | Sisters Compassionate Care LLC (SCC) | 5/6/2020 | PPP | $101,242 | Yes |

| | Total Attempted Amount: | $2,597,838 |
|---|---|---|
| | Total Funded Amount: | $1,609,735 |

31